*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| BACHNER COMPANY, INC., | ) |
| | ) Supreme Court Nos. S-17150/17179 |
| Appellant and Cross-Appellee, | ) |
| | ) Superior Court No. 3AN-16-06598 CI |
| v. | ) |
| | ) O P I N I O N |
| STATE OF ALASKA, | ) |
| DEPARTMENT OF | ) No. 7466 – July 10, 2020 |
| ADMINISTRATION, DIVISION OF | ) |
| GENERAL SERVICES, | ) |
| | ) |
| Appellee and Cross-Appellant. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Pamela Scott Washington, Judge pro tem.

Appearances: Michael C. Kramer and Robert John, Kramer and Associates, Fairbanks, for Appellant and Cross-Appellee. Rebecca E. Hattan and Rachel L. Witty, Assistant Attorneys General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee and Cross-Appellant.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

MAASSEN, Justice.

## I. INTRODUCTION

A company leased office space to the State. The lease stipulated that the

State would occupy 15,730 square feet of space but would not have to pay rent on 1,400 square feet of that space during the lease's initial ten-year term. The lease further specified that if it was extended beyond the initial term the parties would negotiate a rate for the free space and the State would pay for it.

Toward the end of the initial term the State exercised its first renewal option and opened negotiations with the company over the free space's value. The parties retained an expert to value the space, but the State questioned his methods and conclusions. The State also resisted the company's claim that the State should begin paying rent for additional space, not identified in the lease, that the company contended the State had been occupying. The parties failed to reach agreement, and the State did not pay rent for any of the extra square footage. Eventually the State executed a unilateral amendment to the lease based on the expert's valuation and, ten months after the end of the lease's initial term, paid all past-due rent for the formerly free space identified in the lease.

The company filed a claim with the Department of Administration, contending that the State had materially breached the lease, the lease was terminated, and the State owed additional rent. A contracting officer rejected the claim, and on appeal an administrative law judge found there was no material breach, the lease had been properly extended, and the company had waived any claim regarding space not identified in the lease. The Commissioner of the Department of Administration adopted the administrative law judge's findings and conclusions. The superior court affirmed the Commissioner's decision except with regard to the space not identified in the lease; it directed the company to pursue any such claim in a separate action. Both parties appealed to this court.

Because the administrative law judge's findings — adopted by the Commissioner — are supported by substantial evidence, and because the lease did not terminate under our interpretation of it, we affirm the Commissioner's decision except with regard to the company's claim to rent for space not identified in the lease. We do not consider the merits of this claim, but we conclude that, to the extent it seeks rent after the end of the initial term, it was not waived by the document on which the administrative law judge relied to find waiver. We remand only that issue to the Commissioner for further consideration.

## II.    FACTS AND PROCEEDINGS

### A.    Background Facts

In 2003 Bachner Company, Inc. — the successful bidder in response to a request for proposals — leased the State "approximately 15,730 square feet of office space" for a ten-year term, from September 2003 to September 2013. The lease provided that "[t]he monthly lease payment indicated herein is applicable only to 14,330 square feet of the lease." The lease acknowledged, however, that Bachner was providing the State an additional 1,400 square feet "for the State's exclusive use, at no cost to the State during the firm term," i.e., the initial ten-year term.[1] At the firm term's conclusion the State had the option to renew the lease for ten one-year periods. If the State chose to renew, it was required to "either vacate and discontinue use of [the formerly free] 1,400 square feet of space or negotiate with [Bachner] to pay the then-prevailing market lease rates" for that space. If the parties could not agree on a rate for that space, "a mutually acceptable third party [would] be contracted to determine the market lease rates."

---

[1]    The lease uses the phrase "firm term" without defining it, but the parties agree that it refers to the initial term identified in the lease as running from September 26, 2003, to September 30, 2013.

According to an affidavit later filed by Bachner's president, the company realized before the lease was signed that, because of negotiated changes to the floor plan, the State would actually be enjoying the use of even more square footage than the 14,330 square feet it paid for and the 1,400 square feet identified in the lease as initially free. But the State refused to agree to changes in either the lease's stated square footage or the amount of rent, and the lease was executed without modification.

In June 2013, about three months before the end of the firm term and in anticipation of exercising its first renewal option, the State contacted Bachner to begin negotiating a rate for the 1,400 square feet that had been provided rent-free. In response Bachner brought up the additional space it claimed the State had been occupying, which, according to Bachner, amounted to an additional 1,434 square feet.

The State and Bachner were unable to agree on the appropriate rate for the formerly free 1,400 square feet, though they did agree that any adjustment would be retroactive to October 2013. As required by the lease terms, the parties sought an opinion from a local realtor. In a December 2013 opinion letter, the realtor estimated the value of the 1,400 square feet at $2.35 per square foot. The State asked for clarification, which the realtor provided, but the State's continued rental payments failed to include any amount for the formerly free space.

On April 8, 2014, six months after the first payment came due for the renewal term, Bachner notified the State that it was in default. The notice read in its entirety: "Lessee (State of Alaska) is in default in their payment of rent on Lease #2532 and Lease #2530. Please consider this your official notification." The State responded on May 27 with a proposed amendment to the lease, accepting the realtor's evaluation of $2.35 per square foot for the 1,400 square feet that had been rent-free. But Bachner refused to sign the amendment, in part because it did not address the additional 1,434 square feet Bachner had identified as included in the space the State was occupying. In

June, more than 60 days after the notice of default, Bachner sent a letter advising the State that it had failed to cure its breach of the duty to pay rent and that the State must therefore either vacate the premises or negotiate a new lease. In response, on August 5, the State unilaterally executed an amendment adopting the realtor's estimated value for the 1,400 square feet, and on August 11 the State directly deposited rent for that space, retroactive to October 2013, in Bachner's bank account.

## B.     Administrative Proceedings

In September 2014 Bachner filed an action in the superior court seeking to evict the State, but the court dismissed the complaint for failure to exhaust administrative remedies. Bachner appealed, and we issued an opinion in 2016 affirming the dismissal.[2] In the meantime Bachner had filed a claim with the Department of Administration pursuant to the State Procurement Code.[3] The contracting officer construed Bachner's claim as consisting of two issues: (1) whether Bachner had terminated the lease, and (2) whether the State was required to pay for the additional 1,434 square feet not mentioned in the lease. The contracting officer found that the lease was not terminated because the State had not materially breached it, and that even if there was a material breach Bachner had not taken the steps necessary to effect a termination. The contracting officer found that the claim involving the uncompensated 1,434 square feet was not timely filed because AS 36.30.620(a) requires a contractor to file claims within 90 days, and "[Bachner] was aware of the square footage issue in 2003" when the floor plans were finalized. The contracting officer determined in the alternative that the claim should be denied on its merits; he found no support in the lease or the parties' course of dealing for Bachner's claim that the State was obligated to pay for the 1,434 square feet.

---

[2]     *Bachner Co. v. State, Dep't of Admin.*, 387 P.3d 16, 25 (Alaska 2016).

[3]     AS 36.30.550-.699.

Bachner appealed the contracting officer's decision to the Commissioner of Administration. An administrative law judge (ALJ) issued a lengthy and detailed decision. Noting the parties' agreement that the claim "could be decided based on written briefs and the documentary record," the ALJ granted the State's motion for summary adjudication. He noted the "long, complex history between the parties regarding the lease at issue" but observed that the question presented was "fairly narrow": Did the State "commit a material breach of the lease by virtue of its late payment of rent in 2014 for 1,400 square feet of space that had formerly been 'free space' during the first ten years of the lease term, thus causing the lease to be terminated?" The ALJ did not address arguments relating to the 1,434 additional square feet, finding in footnotes that Bachner had "explicitly waived any such claim."

Like the contracting officer, the ALJ concluded that the State had not materially breached the lease. He relied on tests set out in the Restatement (Second) of Property[4] and the Restatement (Second) of Contracts[5] to conclude that the untimely rent payment for the 1,400 square feet of formerly free space was not a material breach; and further, that even if it was a material breach, the lease did not automatically terminate when the State failed to cure within 60 days of Bachner's notice letter because Bachner failed to take the affirmative action necessary to terminate the lease. The Commissioner adopted the ALJ's findings and conclusions as his final decision.

### C. Superior Court Decision

Bachner appealed the Commissioner's decision to the superior court. The court affirmed the ALJ's findings that there had been no material breach and the lease

---

[4] RESTATEMENT (SECOND) OF PROPERTY: LAND. & TEN. § 13.1 (AM. LAW. INST. 1977).

[5] RESTATEMENT (SECOND) OF CONTRACTS § 241 (AM. LAW. INST. 1981).

had not terminated. But the court came to a different conclusion on the question of payment for the additional 1,434 square feet of space not mentioned in the lease that the ALJ considered waived. Rather than relying on waiver, the court held that "Bachner improperly attempted to bring the claim for the space in this contract action." The court held that under "simple contract law," that claim was "a completely different claim, separate of the contract in question." The court declined to consider the issue on its merits because neither party had sufficiently addressed it. Both parties filed appeals to this court.

## III. STANDARD OF REVIEW

When the superior court acts as an intermediate court of appeal, we independently review the agency decision.[6] We have defined four standards of review for administrative cases:

> (1) the substantial evidence standard applies to questions of fact; (2) the reasonable basis standard applies to questions of law involving agency expertise; (3) the substitution of judgment standard applies to questions of law where no expertise is involved; and (4) the reasonable and not arbitrary standard applies to review of administrative regulations.[7]

Contract interpretation generally involves questions of law, which we review de novo.[8]

---

**6**     *Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1115 (Alaska 2007).

**7**     *Alaskan Crude Corp. v. State, Dep't of Nat. Res., Div. of Oil & Gas*, 261 P.3d 412, 419 (Alaska 2011) (quoting *Pasternak v. State, Commercial Fisheries Entry Comm'n*, 166 P.3d 904, 907 (Alaska 2007)).

**8**     *State, Dep't of Nat. Res. v. Alaskan Crude Corp.*, 441 P.3d 393, 398 (Alaska 2018) (*Alaskan Crude II*); *Exxon Corp. v. State*, 40 P.3d 786, 792 (Alaska 2001) ("Interpretation of a contract is a question of law that is not within [a] department's special expertise or skill.").

We will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[9] Whether a contract breach is material, however, must "ordinarily . . . be left to the factfinder," though "in some cases the breached provision is so obviously central to the purpose of the contract that materiality can be determined as a matter of law."[10]

## IV. DISCUSSION

### A. The Commissioner's Decision That The State Did Not Materially Breach The Lease Is Supported By Substantial Evidence.

Bachner argues that it had the right to terminate the lease because of the State's material breach. The ALJ decided the material breach issue on the "written briefs and the documentary record," the parties having "stipulated that no evidentiary hearing was necessary." The ALJ analyzed the facts in the context of two different tests for determining materiality — one from the Restatement (Second) of Property and one from the Restatement (Second) of Contracts — concluding that "[u]nder either standard, [the State's] failure to timely pay the rent for the 1,400 square feet of free space did not rise to the level of a material breach of the lease agreement." We conclude that the ALJ's findings on this issue, adopted by the Commissioner as his final decision, are supported by substantial evidence.[11]

#### 1. Substantial evidence supports the ALJ's findings under the Restatement (Second) of Property test.

The test for material breach found in the Restatement (Second) of Property, characterized by the ALJ as a "broad standard," provides that a landlord may terminate a lease if the tenant fails to perform a promise and the landlord is thereby "deprived of

---

[9] *McMullen v. Bell*, 128 P.3d 186, 190 (Alaska 2006).

[10] *Alaskan Crude II*, 441 P.3d at 401.

[11] Because the evidence supports the Commissioner's decision under both tests, we need not decide today whether one is more appropriate than the other.

a significant inducement to the making of the lease [and] the tenant does not perform his promise within a reasonable period of time after being requested to do so."[12] The ALJ explained why the evidence failed to satisfy this test. First, he found that Bachner's agreement to offer the 1,400 square feet rent-free during the lease's firm term showed that the State's "delay in timely payment of rent for that space ten years later" could not have "deprived [Bachner] of a 'significant inducement to the making of the lease.' "

The Restatement (Second) of Property test is framed in the conjunctive — meaning that the absence of the first element was enough to find the breach immaterial[13] — but the ALJ went on to consider the second element as well: whether the tenant did "not perform [its] promise within a reasonable period of time after being requested to do so."[14] The ALJ construed "reasonable period of time" in the context of Bachner's own efforts to reach agreement: "[T]here can be no dispute that it was [Bachner] that interjected the issue of additional square footage into the parties' negotiations," "overshadow[ing] and unduly complicat[ing]" the negotiations by its "consistent posturing regarding the *additional* square feet that it believed should be paid for (more than doubling the amount of square footage under negotiation)." (Emphasis in original.) The ALJ concluded: "Under these facts, [Bachner] cannot establish that it

---

[12]     RESTATEMENT (SECOND) OF PROPERTY: LAND. & TEN. § 13.1 (AM. LAW. INST. 1977).

[13]     *See, e.g.*, *City & Borough of Juneau v. Thibodeau*, 595 P.2d 626, 634 (Alaska 1979) ("Courts which have interpreted ordinances phrased in the conjunctive form have consistently required the applicant for a variance to satisfy both . . . elements of the variance test."), *disavowed on other grounds, State v. Alex*, 646 P.2d 204, 208-09 n.4 (Alaska 1982); *In re Stern*, 403 B.R. 58, 68-69 (Bankr. C.D. Cal. 2009) (observing that because elements of statutory test for setting aside asset transfer "are stated in the conjunctive, [this] means that *both* elements must be proven") (emphasis in original)).

[14]     RESTATEMENT (SECOND) OF PROPERTY: LAND. & TEN. § 13.1.

made a clear request for [the State] to make timely payment for the 1,400 square feet, or that [the State] failed to pay within a reasonable period after such a request was made."

The ALJ's finding that the breach was immaterial under this test is supported by substantial evidence. Regarding the "significant inducement" element, the evidence is undisputed that in 2003 Bachner freely entered into the lease designating the 1,400 square feet as free for the duration of the firm term. Bachner knew it would not get paid for that space for at least 120 months, possibly longer if the State decided to vacate the space at the end of the firm term and left Bachner to find a new tenant. The length of delay is a small fraction of the parties' over-ten-year relationship, and the unpaid rent is a small fraction of the amount the State paid to Bachner during that time.

As for the reasonableness of the State's delay in performing, the ALJ placed it in the context of the negotiations that stalled primarily because of Bachner's tactical decisions. The State contacted Bachner to begin negotiating a rate for the 1,400 square feet three months before it planned to exercise its first renewal option. The parties followed their contractual process by hiring a realtor to determine a fair market rate for that space, but Bachner added a demand for rent for the additional 1,434 square feet not mentioned in the lease. When the State acceded to the realtor's estimate for the 1,400 square feet and proposed a lease amendment accepting it, Bachner refused to sign the amendment because it did not account for the additional 1,434 square feet. The State pressed Bachner to resolve the separate and contract-based 1,400-square-foot issue, citing the "internal process" that had to be satisfied before the State could "commit additional funds to a lease agreement." But when Bachner was eventually paid, retroactive to October 2013, it was only because the State unilaterally executed an amendment to the lease, adopting the realtor's rate for the 1,400 square feet addressed by the lease, and deposited the past-due amounts in Bachner's account.

The evidence supporting the ALJ's findings is substantial. Relying on these findings, the Commissioner's decision that the State's breach of the lease was immaterial under the Restatement (Second) of Property test was therefore not erroneous.

### 2. Substantial evidence supports the ALJ's findings under the Restatement (Second) of Contracts test.

Analyzing the same facts under the different test for material breach set out in the Restatement (Second) of Contracts, the ALJ began by setting out the test's five elements:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

> (b) the extent to which the injured party can be adequately compensated [in damages] for the part of that benefit of which he will be deprived;

> (c) the extent to which the party failing to perform . . . will suffer forfeiture;

> (d) the likelihood that the party failing to perform . . . will cure his failure, taking account of all the circumstances including any reasonable assurances; [and]

> (e) the extent to which the party failing to perform . . . comports with standards of good faith and fair dealing.[15]

The ALJ found that Bachner satisfied the first element, "in that it could reasonably expect to be paid for the 1,400 square feet [following lease renewal], and the breach did deprive [Bachner] of that benefit for a period of time." But the ALJ found that none of the other elements favored Bachner. "[A]s to the second element, [Bachner] clearly could be adequately compensated by damages," and in fact had already been made whole by the State's late payment of all past-due rent. The third element also weighed in the State's favor because a finding of material breach "resulting in

---

[15] RESTATEMENT (SECOND) OF CONTRACTS § 241 (AM. LAW. INST. 1981).

-11-                                    **7466**

termination of the lease would cause an extreme forfeiture of [the State's] interest in the leasehold." The fourth element weighed in the State's favor as well because the State had already made its "curative payment." The undisputed evidence supports the ALJ's findings on these issues, and the Commissioner did not err by adopting them.

As for the fifth element — whether the State's behavior "comport[ed] with standards of good faith and fair dealing"[16] — the ALJ found that Bachner "failed to adduce any evidence that [the State] did not act in good faith in negotiating the market rate for the 1,400 square feet." The ALJ rejected Bachner's argument that the State's "very low initial market rate offer" of 60 cents per square foot was evidence of bad faith, finding that it showed "nothing more than" an early negotiating step. The ALJ concluded, in fact, that it was Bachner whose conduct fell short of that required to complete a good-faith negotiation:

> If anything, the evidence would suggest that [Bachner] was engaged in manipulation of the negotiations to attempt to effect a termination of the lease and then execute a better deal with [the State]. [Bachner's] intentions in this context are evidenced by the fact that [Bachner] did nothing to help resolve any perceived problems with [the State's] proposed bilateral amendment *as it related to the 1,400 undisputed square feet*. For example, [Bachner] could have suggested carving that issue out and reaching agreement on it, knowing from its long dealings with the State that until a lease amendment was executed no payment could be made for the 1,400 square feet. Instead, [Bachner] sent a letter from counsel continuing to argue about the issue of total square footage, and then shortly thereafter issued another letter from counsel declaring that [the State] had failed to cure its breach "for failure to pay rent," again without specifying that the breach related to rent as to the 1,400 square feet. [Emphasis in original.]

---

[16]     *Id.*

Bachner challenges the ALJ's good-faith finding, asserting that the State materially breached the lease not just by withholding rent but by doing so fraudulently,[17] with the purpose of coercing Bachner into a deal that unfairly favored the State. Bachner characterizes the State's offered lease amendment — agreeing to the realtor's recommended rate of $2.35 per square foot for the 1,400 square feet of formerly free space — as "bad-faith bargaining and extortion," intended to force Bachner to choose between receiving the amounts it was indisputably owed for that 1,400 square feet and continuing to pursue its claim to payment for the additional 1,434 square feet not mentioned in the lease.

But the ALJ construed the same evidence differently. He found that the State's offers were simply steps in the negotiation and it was Bachner that sought to misuse the process, withholding its approval of an amendment specifically contemplated by the lease in order to force the lease's termination and coerce the State into paying rent for the square footage the parties had never agreed to include. As noted above, there is substantial evidence to support the ALJ's view. Because the ALJ's finding under the Restatement (Second) of Contracts test for material breach is supported by substantial evidence, it was not error for the Commissioner to adopt it.

## B. The Lease Did Not Terminate, And The State Therefore Properly Exercised Its Right to Renew.

Bachner argues that the lease terminated on June 19, 2014, after it gave the State notice of the breach on April 8, 2014, and that the State's August payment of past-due amounts was merely the settlement of a debt that could not "unilaterally un-terminat[e] the lease." The ALJ held that the lease did not terminate absent some more

---

[17] *Alaska Interstate Constr., LLC v. Pac. Diversified Invs., Inc.,* 279 P.3d 1156, 1173 (Alaska 2012) ("[F]raud and other forms of intentional wrongdoing constitute material breaches of contract as a matter of law.").

affirmative action on Bachner's part to terminate it. Reviewing the issue de novo as a matter of contract interpretation, we agree with the Commissioner that the ALJ correctly decided the issue.

The lease describes Bachner's options upon default in permissive terms. If the State is in "default in the payment of rent . . . and . . . shall fail to remedy such default within sixty (60) days after written notice thereof . . . it shall be lawful for [Bachner] to enter upon [the] premises and again have, repossess, and enjoy the same as if the lease had not been made." And "[i]n case of any such default and entry by [Bachner], [Bachner] may relet [the] premises for the remainder of said term." These provisions are consistent with the common law as described in the Restatement (Second) of Property, which explains that if a tenant fails to perform a promise in the lease and "does not perform his promise within a reasonable period of time after being requested to do so, the landlord *may*: (1) terminate the lease and recover damages; or (2) continue the lease and obtain appropriate equitable and legal relief."[18] According to the Restatement, a "lease is not automatically terminated by the tenant's failure to perform."[19] Rather, the landlord's right to terminate "is an option to terminate," the exercise of which requires both notice and the tenant's subsequent failure to remedy.[20]

The ALJ found that Bachner failed to complete its threatened termination; after sending the notice of default and letter advising the State of its failure to cure, Bachner "just continued negotiating." Bachner also continued accepting rent for the

---

[18] RESTATEMENT (SECOND) OF PROPERTY: LAND. & TEN. § 13.1 (emphasis added).

[19] *Id.* at cmt. k.

[20] *Id.*

square footage that was not in dispute. We agree with the ALJ that this course of action was not "consistent with an intent to terminate the lease."[21]

As the lease was not terminated, the State properly exercised its right to renew in 2014. The State was then current on its rent obligations and not in default; it had retroactively paid all the rent for the 1,400 square feet contemplated by the lease. We therefore agree with the ALJ's conclusion, adopted by the Commissioner, that the State was "entitled to renew the lease, and its September 2, 2014 renewal was valid."

### C. Bachner's Claim To Rent For The Additional 1,434 Square Feet After October 2013 Must Be Remanded For Further Proceedings.

Bachner also argues that it is entitled to rent at the fair market rate for the 1,434 square feet it claims the State occupies because of floor-plan changes but which the parties did not address in the lease. As noted above, the contracting officer rejected the claim both on timeliness grounds and because the parties' agreement never contemplated that the State would pay rent for that square footage: charging rent for it "would represent a material change to the lease 10 years after it was executed," effected "unilaterally" by Bachner "to the financial detriment of the State."

The State argues that Bachner subsequently waived this claim on its administrative appeal when it advised the ALJ: "Although timely, [Bachner] voluntarily waives any rent claim for the extra 1,434 square feet up until the first renewal on October 1, 2013." The ALJ relied on this waiver when he declined to address "any

---

[21] The contracting officer also relied on AS 09.45.105, prescribing the necessary content of a notice to quit, and found that Bachner's notice was deficient under the statute. The ALJ questioned whether the notice-to-quit statute was consistent with Bachner's other obligations under the procurement code and declined to reach the issue, finding that "[w]hether or not the statutory requirement had to be met, . . . [Bachner] at least was required to take clear steps to terminate the lease — steps that are consistent with an intent to terminate," and Bachner "did anything but that." Like the ALJ, we find it unnecessary to analyze Bachner's clam under the notice to quit statute.

questions regarding [Bachner's] claim that [the State] occupied greater than 1,400 square feet of free space." The superior court disagreed that the issue was waived, but it concluded that it could not be addressed in this case because it involved "a completely different claim" and "because neither party has had an opportunity to sufficiently address the issue."

Bachner now argues that it is entitled to rent for the 1,434 square feet retroactive to 2003 under various theories, citing "[l]aw, [e]quity, [a]nd [t]he Fifth Amendment [a]nd [t]he Alaska Constitution." But Bachner clearly waived any claim to rent for that space during the lease's firm term with its unequivocal statement to the ALJ. The ALJ erred, however, by construing the waiver to include a claim for rent after October 2013, which the waiver does not purport to address.

We express no opinion about the timeliness or merit of this claim. We note only that Bachner did not expressly waive it in the pleading on which the ALJ relied for the finding of waiver. We therefore remand to the Commissioner for further proceedings on this issue only.[22]

## V.    CONCLUSION

We AFFIRM the Commissioner's decision in all respects except for the issue of whether Bachner waived its claim to rent for the additional 1,434 square feet after October 2013. We REMAND to the Commissioner for further consideration of only that claim.

---

[22]    *See White v. State, Dep't of Nat. Res.*, 984 P.2d 1122, 1128 (Alaska 1999) (remanding administrative appeal to Commissioner for decision of factual dispute material to lease interpretation).