NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BACHNER COMPANY, INC., | ) | |
| | ) | Supreme Court No. S-18768 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-21-07638 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) | AND JUDGMENT* |
| OF ADMINISTRATION, DIVISION | ) | |
| OF GENERAL SERVICES, | ) | No. 2069 – February 5, 2025 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Yvonne Lamoureux, Judge.

Appearances: Michael C. Kramer, Kramer and Cosgrove, and Robert John, Law Office of Robert John, LLC Fairbanks, for Appellant. Rachel L. Witty, Chief Assistant Attorney General, Anchorage, and Treg Taylor, Attorney General, Juneau, for Appellee.

Before: Maassen, Chief Justice, and Carney, Henderson, and Pate, Justices. [Borghesan, Justice, not participating.]

## I.    INTRODUCTION

A company leased office space to the State in 2003. When the State renewed the lease in 2013, the company alleged the State owed additional rent for space

---

\*    Entered under Alaska Appellate Rule 214.

the State was occupying but was not under lease. The company filed a claim with the Department of Administration, which eventually reached us on appeal.[1] We remanded the issue of whether the company's claim for rent for space not identified in the lease had been waived. An administrative law judge (ALJ) determined that the claim was not waived but that the company was not entitled to additional rent because the lease permitted the State to occupy the space at issue. The Commissioner adopted that decision and the superior court affirmed. We agree with the ALJ's conclusion and affirm the Commissioner's decision.

## II. FACTS AND PROCEEDINGS

### A. Facts

In 2003 Bachner Company, Inc. was the successful bidder in response to the State's request for proposals for office space. Bachner leased the State "approximately 15,730 square feet of office space" but the lease provided that "[t]he monthly lease payment indicated herein is applicable only to 14,330 square feet of the lease." The remaining 1,400 square feet was provided "for the State's exclusive use, at no cost to the State during the firm term."[2] The lease included an itemized list of the rooms and areas leased to the State, and also provided that the State "shall have full access to and use of all common areas of the building." Taken together, the itemized list of leased space, common areas, and unusable areas (i.e., space between walls) make up the entire first floor. The lease was for a 10-year firm term, with an option to renew

---

[1] *See Bachner Co., Inc. v. State, Dep't of Admin., Div. of Gen. Servs.* (*Bachner II*), 468 P.3d 703 (Alaska 2020).

[2] According to an affidavit filed by Bachner's president, the company realized before the lease was signed that because of negotiated changes the State would actually be enjoying the use of more square footage than the 14,330 square feet identified in the lease. But, according to the affidavit, the State refused to agree to changes in either the square footage or the amount of rent, and the lease was executed without modification. *Id.* at 705.

for ten additional one-year periods at a significantly reduced monthly rate. If the State chose to renew the lease, it was required to "either vacate and discontinue use of [the formerly rent-free] 1,400 square feet of space or negotiate with [Bachner] to pay the then-prevailing market lease rates" for that space. If the parties could not agree on a rate for that space, "a mutually acceptable third party [would] be contracted to determine the market lease rates."

Shortly before the end of the firm term, the State contacted Bachner to begin negotiating a rate for the 1,400 square feet that had previously been provided rent-free. In response, Bachner claimed that because "adding the 1,400 square feet to the [State] space" would result in "[the State] occupying the entire first floor which we show to be 10,368 (162′ x 64′) square feet," and the original bid offered the State only 7,555 square feet of space on the first floor, the adjustment for previously rent-free space would be for 2,813 square feet, and not 1,400 as the lease stated.

The parties were initially unable to reach agreement on the appropriate rate for the formerly free 1,400 square feet and sought an opinion from a local realtor, as required by the terms of the lease. In December 2013 the realtor estimated the value of the 1,400 square feet at $2.35 per square foot. The State asked for clarification and continued to pay rent as it had during the firm term, without including an additional amount for the disputed space. Bachner notified the State it was in default in April, and the State responded in May with a proposed amendment to the lease, accepting the realtor's evaluation. Bachner refused to sign the amendment because it did not address the disputed space, which Bachner asserted amounted to 1,434 square feet. In June Bachner sent the State a letter advising that it had failed to cure its breach of the duty to pay rent and demanding that the State either vacate the property or negotiate a new lease. In August the State unilaterally executed an amendment adopting the realtor's estimated value for the 1,400 square feet and directly deposited rent for that space, retroactive to October 2013.

### B. Proceedings

#### 1. Prior proceedings

Bachner has filed numerous actions against the State in an attempt to recover additional rent for this office space and has twice come before us on related appeals.[3] The claim relevant to this appeal was filed with the Department of Administration in 2015 pursuant to the state Procurement Code.[4] The contracting officer construed Bachner's claim as consisting of two issues: (1) whether Bachner had terminated the lease, and (2) whether the State was required to pay for the additional 1,434 square feet not mentioned in the lease. The contracting officer found that the lease was not terminated and the claim involving the 1,434 square feet was not timely filed.

Bachner appealed the contracting officer's decision to the Commissioner of Administration. An ALJ issued a decision finding the lease was not terminated and that claims regarding the 1,434 square feet had been waived. The Commissioner adopted the ALJ's findings and conclusions as his final decision. Bachner appealed to the superior court, which affirmed the ALJ's findings regarding lease termination. But the superior court determined that "Bachner improperly attempted to bring the claim [regarding the 1,434 square feet] in this contract action" when it was "a completely different claim, separate from the contract in question." It declined to consider the issue on the merits because neither party had sufficiently briefed it.

Bachner then appealed to us, and we affirmed the Commissioner's decision "in all respects except for the issue of whether Bachner waived its claim to rent

---

[3] *See Bachner Co., Inc. v. State, Dep't of Admin., Div. of Gen. Servs.* (*Bachner I*), 387 P.3d 16 (Alaska 2016); *Bachner II*, 468 P.3d 703 (Alaska 2020).

[4] *See* AS 36.30.550-.699.

for the additional 1,434 square feet after October 2013."[5]  We remanded to the Commissioner for further consideration of that claim.[6]  We noted that we "express[ed] no opinion about the timeliness or merit of this claim."[7]

## 2.    Remand

On remand Bachner and the State each moved for summary adjudication. The State argued that Bachner knew what space the State was occupying when it entered the lease in 2003, and therefore waived any claim for additional rent for that space by not raising it at that time.  The State argued that if the claim was not waived, it should be denied because Bachner bore the risk of any mistake in floor plans or property descriptions.  Bachner argued that (1) the State violated the covenant of good faith and fair dealing by not including all of the square footage in the lease, (2) the State had been unjustly enriched by the use of the additional square footage (which Bachner then claimed was 1,871 square feet and not 1,434) and quantum meruit therefore entitled Bachner to relief, and (3) the State's use of the square footage not covered by the lease amounted to a taking under the state and federal constitutions.

The ALJ determined that Bachner had not waived its claim to additional rent because the claim concerned its rights upon lease extension and it raised the issue at the time of lease extension.  But because the State had the right to use all first floor space since 2003, Bachner was entitled to additional rent only for the 1,400 square feet of initially free space identified in the lease and not the additional square footage.  In framing its findings, the ALJ distinguished between "Exclusive Space" (the 14,300 square feet of non-free space identified and itemized by the lease), "Bonus Space" (the

---

[5]    We held that Bachner "clearly waived any claim to rent for that space during the lease's firm term," based on an explicit statement to that effect it made to the ALJ. *Bachner II*, 468 P.3d at 711.

[6]    *Id.*

[7]    *Id.*

1,400 square feet provided free of charge), and "Non-Exclusive Space" (common areas and unusable space). It found that the lease expressly required Bachner to provide non-exclusive access to common and unusable areas on the first floor, and, based on the floor plan, those areas plus the bonus space and itemized spaces identified on the lease accounted for the entire first floor.

The ALJ also found that, according to the lease, the only action that would trigger additional rent was the retention of the 1,400 square feet of bonus space. Bachner's demand for additional rent beyond that would constitute a material change in the lease, which is prohibited for competitive public contracts.[8] Therefore, the State could not have agreed to pay additional rent for unidentified space and it would not be reasonable to interpret the lease to allow it. Because the lease provided for the State to use all of the first floor, Bachner's arguments regarding the takings clauses, unjust enrichment, and quantum meruit failed.

After the ALJ issued a notice regarding the proposed decision, Bachner filed a Proposal for Action with the Commissioner. The ALJ's notice explicitly instructed the parties in bold font: "**Do not attach documents to the proposal for action**" and "**Do not submit additional evidence now**." (Emphasis in original.) Nonetheless, Bachner attached to its proposal an unsworn "affidavit"[9] from Bachner's president and photographs of various doors on which Bachner claimed the State changed or installed locks to bar access to non-exclusive space. Bachner requested the Commissioner return the case to the ALJ to take new evidence and revise its factual findings and legal conclusions. It argued that the ALJ erred because the State had

---

[8] *See Baxley v. State*, 958 P.2d 422, 433 (Alaska 1998).

[9] We note that the document Bachner refers to as an "affidavit" is merely a signed letter because it is neither sworn nor notarized. *See affidavit*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("A voluntary declaration of facts written down and sworn to by a declarant, usually before an officer authorized to administer oaths.").

"exclusive" use of the entire first floor and therefore no non-exclusive space existed; the ALJ violated Bachner's due process rights by creating new issues sua sponte by relying on the existence of "common" and "unusable" areas; and the ALJ failed to address whether the State was occupying space not identified in the lease as we had directed.

The Commissioner adopted the ALJ's decision, and Bachner appealed to the superior court. The superior court affirmed, finding that the lease was clear and unambiguous and did not allow Bachner to demand rent for additional space. It held that Bachner's challenges to the Commissioner's decision failed because the ALJ properly addressed the issues on remand, Bachner was not denied due process, and Bachner waived any claim based on alleged misconduct from 2003. The ALJ also held that Bachner's additional claims relating to the covenant of good faith and fair dealing, unjust enrichment, and the takings clause also failed.

## III. STANDARD OF REVIEW

"When the superior court acts as an intermediate court of appeal, we independently review the agency decision. We have defined four standards of review for administrative cases:

> (1) the substantial evidence standard applies to questions of fact; (2) the reasonable basis standard applies to questions of law involving agency expertise; (3) the substitution of judgment standard applies to questions of law where no expertise is involved; and (4) the reasonable and not arbitrary standard applies to review of administrative regulations.

Contract interpretation generally involves questions of law, which we review de novo. We will adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[10]

## IV.   DISCUSSION

### A.   The Lease Does Not Allow Bachner To Demand Additional Rent.

Bachner seeks to adjust the rent for an additional 1,871 square feet beyond that identified in the lease, but points to no language in the lease that would permit such an adjustment.[11]  Instead, Bachner argues the State is exclusively occupying more space than is permitted by the lease, entitling it to additional rent.  Because the plain language of the lease permits the State to occupy the entire first floor of the property, Bachner cannot increase the rent for additional square footage.

A lease is a contract we interpret according to contract principles.[12]  The goal in interpreting a contract is to "give effect to the reasonable expectations of the

---

**10**      *Bachner II*, 468 P.3d 703, 707 (Alaska 2020) (internal quotation marks and citations omitted).

**11**      Bachner initially suggested this space was 1,413 square feet and then described it as 1,434 square feet.  Apparently Bachner has again remeasured the space and now claims it is 1,871 square feet.  Our directive on remand was for the Commissioner to consider only "whether Bachner waived its claim to rent for the additional 1,434 square feet." *Id.* at 711.  It was Bachner's responsibility to accurately characterize the space when it began this litigation in 2015, and remand is not an opportunity for a party to expand its claim.  *See Price v. Eastham*, 128 P.3d 725, 732 (Alaska 2006) (noting argument waived if not raised in prior proceedings, even if later raised on remand, as appeal "should narrow the issues in a case, not expand them"). We therefore consider Bachner's arguments only as to the 1,434 square feet identified in the prior proceedings.

**12**      *Rockstad v. Glob. Fin. & Inv. Co.*, 41 P.3d 583, 586 (Alaska 2002).

parties."[13]  When interpreting a lease, we apply a two-step analysis.[14]  First we look to the language of the lease and extrinsic evidence to determine whether it is ambiguous.[15] "Disagreement alone does not establish the existence of an ambiguity. . . . '[A]n ambiguity exists only where the disputed terms are reasonably subject to differing interpretation after viewing the contract as a whole and the extrinsic evidence surrounding the disputed terms.' "[16]  Second if the lease is clear and unambiguous, we "construe it solely according to its written terms."[17]  If the lease is ambiguous we apply "well-established rules of contract interpretation and determine the reasonable expectations of the parties."[18]

> The relevant portion of the lease reads as follows:
>
> The following additional provisions, modifications, exceptions, riders, layouts and or forms were, are, agreed upon prior to execution and made a part hereof:
>
> 1.     The monthly lease payment indicated herein is applicable only to 14,330 square feet of the lease.  The remaining 1,400 square feet of lease space are provided by the Lessor to the State, for the State's exclusive use, at no cost to the State during the firm term.  During the firm term, there shall be no charges related to the State's use of this space including, but not limited to, additional utility costs, other operating costs, administrative costs, or users fees of any kind.

---

[13]     *Stepanov v. Homer Elec. Ass'n*, 814 P.2d 731, 734 (Alaska 1991) (quoting *Mitford v. de Lasala*, 666 P.2d 1000, 1005 (Alaska 1983)).

[14]     *Rockstad*, 41 P.3d at 586.

[15]     *Id.*

[16]     *Id.* (quoting *Wessells v. State, Dep't of Highways*, 562 P.2d 1042, 1046 (Alaska 1977)).

[17]     *Id.*

[18]     *Id.*

2.　At the end of the firm term, if the State exercises one or more of its renewal options, the State shall either vacate and discontinue use of this 1,400 square feet of space or negotiate with the Lessor to pay the then-prevailing market lease rates for the 1,400 square feet of space. If the State and Lessor are unable to agree on the then-prevailing market lease rates, a mutually acceptable third party shall be contacted to determine the market lease rates. The Lessor and the State shall each pay fifty percent (50%) of the fee to be paid to the third party.

3.　The market lease rates calculated in step #2 above shall apply only to 1,400 square feet of the lease space. The monthly lease payments for the remaining 14,330 square feet of lease space shall be $6,018.60, plus applicable CPI adjustments, for any renewal periods as previously indicated in this lease agreement.

The lease terms regarding changes to the amount of rent due are clear and unambiguous. The State's rental payment during the firm term covers all but 1,400 square feet, which was provided to the State free of charge. Upon renewal, the State would begin paying the market rate for that 1,400 square feet, and the calculated market rate "shall apply only to 1,400 square feet of the lease space." The payment for the "remaining 14,330 square feet of lease space" was set at a fixed rate, plus applicable Consumer Price Index (CPI) adjustments. As the superior court observed, "[t]he only variable that changes in this formula is the percentage change in the Consumer Price Index. Square footage is not part of the formula. These are the only two processes by which the parties may adjust or renegotiate the rent rate." Bachner's claim for rent for additional first floor space does not fall within either process.

"The remaining 14,330 square feet of the lease space" does not reflect a precise measurement of all of the space the State occupied. The State argues that the lease makes clear that it is entitled to occupy the entire first floor, and both sides acknowledge that. Bachner's proposal, which was incorporated into the lease, includes an itemized list of the rooms and areas leased to the State and shows 14,330 square feet

is the "total approximate number of net usable square feet offered," representing only those spaces identified on that list. But the lease also provides that the State "shall have full access to and use of all common areas of the building, including, but not limited to elevators, lobbies, stairwells and restrooms," — none of which were included in the itemized list amounting to 14,330 square feet. The itemized list, along with the common areas, and certain unusable areas (i.e., space between walls and an elevator machine room) make up the entire first floor.

The lease is clear and unambiguous that the State is authorized to use all of the usable space on the first floor. Bachner's proposal states that the location of the offered space within the building is "Levels 1 & 2" without qualification. The floor plan shows the entire first floor, identifying every room and area on the floor, and does not indicate that any space is excluded from the lease. The State has occupied the entire first floor of the building since October 2003.

The floor plan indicates that approximately 9,085 square feet were offered to the State on the first floor, including the 1,400 square feet "offered for free." The superior court emphasized the floor plan's use of "approximate," which it determined "demonstrate[d] that the parties anticipated a degree of inaccuracy and did not intend for square footage to be a precise or controlling description of the leased space." We agree that "[i]t was reasonable for the parties to expect that the first floor did not include any square footage beyond the approximately 9,085 square feet encompassing the entire first floor, as pictured on the floor plan," and the fact that Bachner later "measure[d] the first floor space as 10,956 square feet does not alter the terms of the lease." It is also clear from the language of the lease that the parties intended the rent to cover all of the State's rights under the lease, as it states that "all requirements of the lease shall be furnished within the rent price, and at no additional cost to the State."

The lease clearly allows the State to occupy the entire first floor; its occupancy of the first floor is therefore consistent with the terms of the lease. The lease

provides no mechanism to raise rent other than for the 1,400 square feet identified in the lease and CPI adjustments. To permit changes in rent for additional square footage would materially change the lease, which is not permitted for competitively bid public contracts like this one.[19]

## B. Bachner's Remaining Claims Fail.

Bachner's arguments in large part rely on allegations that the State installed locks on the doors and barred entry to common areas, thereby converting formerly non-exclusive space into exclusive space. Bachner relies on this allegation to argue the State's conduct constitutes a taking under the federal and state constitutions and resulted in an uncured lease default that terminated the lease.

Bachner points to the photos and letter it submitted with its Proposal for Action as proof of these allegations, but those documents are not in evidence.[20] Bachner did not seek to admit them before the ALJ, but instead attached them to its Proposal for Action, despite the ALJ's explicit instruction not to attach any documents or evidence to the proposal. Because Bachner's arguments regarding the takings clause and uncured lease default are entirely premised on these unsupported allegations, they must fail.[21]

Bachner also argues the State violated the covenant of good faith and fair dealing and was unjustly enriched by exclusively occupying the entire first floor of the

---

[19]     *See Baxley v. State*, 958 P.2d 422, 433 (Alaska 1998).

[20]     *See* Alaska R. App. P. 604(b)(1)(A) (record on appeal from administrative agencies "consists of the original papers and exhibits filed with the administrative agency"); Alaska R. App. P. 210(a) ("Material never presented to the trial court may not be added to the record on appeal.").

[21]     Bachner also asks us to rely on a new lease that it entered into with the State when the original lease expired in October 2023. Bachner argues the new lease "trues up" the square footage and shows that the State has exclusively occupied the first floor. But the State's use of the entire first floor of the building is undisputed, and the new lease is irrelevant to our resolution of this case because we conclude the original lease permitted the State to occupy the entire first floor.

building, including space not covered by the lease. Bachner asserts that the State's exclusive use of the first floor is evidence of bad faith and the State does not dispute using the entire floor. But "the purpose of the covenant [of good faith and fair dealing] is to effectuate the reasonable expectations of the parties, not add to them, and 'cannot be interpreted to prohibit what is expressly permitted.' "[22] The lease granted the State use of the entire first floor, so by occupying that space the State was merely exercising its contractual rights. The ALJ's finding that the State did not violate the covenant of good faith by exercising its contractual rights is supported by substantial evidence.

Similarly, "there can be no valid claim of unjust enrichment where a party has given fair consideration or value for the benefits obtained."[23] The State and Bachner negotiated a lease agreement for the State's use of office space Bachner owned. The State uses the space it is entitled to occupy under the lease and pays the rent required by the lease. The State has given fair value for the benefits it enjoys and has not been unjustly enriched. Bachner therefore cannot prove its unjust enrichment or quantum meruit claims.[24]

Finally, Bachner argues the ALJ misstated our directive on remand and failed to address the appropriate issue. In *Bachner II*, we remanded the issue of "whether Bachner waived its claim to rent for the additional 1,434 square feet."[25] We also described this as "the company's claim to rent for space not identified in the

---

[22] *Casey v. Semco Energy, Inc.*, 92 P.3d 379, 384-85 (Alaska 2004) (quoting *Ramsey v. City of Sand Point*, 936 P.2d 126, 133 (Alaska 1997)).

[23] *Soules v. Ramstack*, 95 P.3d 933, 940 (Alaska 2004) (citing *Alaska Sales & Serv. Inc. v. Millet*, 735 P.2d 743, 746 (Alaska 1987)).

[24] *See Bennett v. Artus*, 20 P.3d 560, 563 (Alaska 2002) ("We treat unjust enrichment and quantum meruit claims as essentially the same.").

[25] *Bachner II*, 468 P.3d at 711.

lease."[26] The ALJ framed the issue as: "upon lease extension, can [Bachner] claim additional rent for common or unusable areas on the building's first floor because the State is occupying all of the usable space on that floor?"

As explained above, the floor plan attached to the lease shows that all of the space on the first floor is either identified in Bachner's itemized proposal, common space, or unusable space. The ALJ's characterization of "space not identified in the lease" as "common or unusable areas" was appropriate, and the ALJ addressed the issue we remanded by finding the lease permitted the State to occupy the entire first floor of the building.[27]

## V.    CONCLUSION

We AFFIRM the Commissioner's decision.

---

[26]     *Id.* at 705.

[27]     *See id.*